Number 181818, Starr Surplus Lines Insurance Co. v. Mountaire Farms Inc. Thank you. Thank you. Ms. Fowler. Good morning. May it please the Court, Eileen King Bower, on behalf of Appellant Starr Surplus Lines Insurance Co., subrogated to the rights of its policyholder, Advanced PR Foods Inc. I would like to reserve two minutes for rebuttal, if I may. Yes, you may. In order to survive a motion to dismiss under Rule 12b-6, the plaintiff must demonstrate that it has pled sufficient facts to raise a reasonable expectation that discovery will reveal evidence supporting the claim. This is recognized as a hallmark of plausibility. Mountaire has devoted a significant amount of its argument in briefing to the argument that Starr has failed to plead sufficient facts to make the claim plausible and refers to the U.S. Supreme Court cases of Twombly and Iqbal. But ultimately, in its brief, Mountaire admits on page 24, quote, the upshot is that Starr's well-pleaded allegations are equally consistent with competing factual scenarios. One might infer that an illness-causing pathogen was present in Mountaire's raw chicken all along, but one could equally infer that the pathogen entered Advanced PR's downstream food products through other ingredients such as broccoli or cheese in Advanced PR's chicken kievs, chicken cordon bleus, etc. In this statement, Mountaire essentially admits that Starr has pled a plausible claim for relief. The question remains whether the district court erred in finding that Starr's claim is barred as a matter of law because salmonella is natural in raw chicken. We're not going to decide this case on the basis of concessions. So your complaint is rather bare bones. Let's assume hypothetically that there is a new dangerous strain of salmonella out there. And let's assume that a characteristic of that salmonella is that if you follow the normal cooking instructions and you cook the chicken and the rest of the product to 165 degrees, which normally would kill salmonella, it doesn't do the trick. The problem is if we look at your complaint, you haven't exactly pled that, or do you think you have? And if you have, you better tell us where you pled that. Your Honor, what we have pled is claims for breach of a pled warranty and strict liability. This is a case in which Starr is standing in the shoes of its insured advanced peer, is bringing a claim against the entity that you... Will you answer my question? Yes, of course, you're subrogated. Yes. Look at your complaint and tell us what it is you've alleged that goes beyond this chicken had salmonella in it. This complaint goes beyond this chicken has salmonella that one would expect to find in the type of chicken you would purchase at a grocery store as an end consumer. Salmonella is of an acceptable amount that can basically be expected to be eliminated through cooking. That is not what this complaint alleges. I want you to go to the complaint, point out the specific allegations that you're relying on. What this complaint alleges is that there were... There was an outbreak of salmonella intraduterous in two different states. When that outbreak happened, there were pathogens, unique PFG pattern combinations, which are like DNA fingerprints that were identified in the affected individuals. The outbreak was then specifically linked to Advanced Pierre products because of those PFG pattern combinations. What our complaint has alleged is that Advanced Pierre was then ordered to recall the product because once a product is contaminated and linked to an outbreak of illness, an outbreak of human illness, that outbreak can be linked to a specific product that product is then deemed adulterated and must be recalled because it's not fit for sale or human consumption. So here's what I'm... Imagine in your complaint all you referred to was salmonella and everything else you just said was true. There was an outbreak. They were able to link the outbreak to your product or to the product of the defendant in this case. And there was a recall. Could you win in that case? Could we win against non-air? Would you have planned enough if the complaint only alleged that salmonella was found in the product, that an outbreak occurred in consequence of people consuming that product, that the product was traceable to the defendant, and that on that basis a recall had been ordered? Would that be enough? I think there would be a closer call, but I still think it would be enough. And I think it would be enough because there is distinction that has to be drawn between a raw poultry product that is linked to human illness and then the product linked to the illness triggers the recall. It means that the product is not safe for sale. But what I don't follow is if all you pled was that it was salmonella, people consumed it, got sick, people knew that the people who consumed it got sick, that somehow it was traceable to the defendant's product and there was a recall, that would be perfectly consistent with the state law cases that say having a product that merely has salmonella that results in people getting sick is not enough. So what more do you have than that in your complaint? What we have is this salmonella, not all salmonella is the same. Let's take the Quebecus case, for instance. It's not a salmonella case, I understand. It involves trichinosis from pork. But I think there's a similar argument that can be made. In the Quebecus case, after discovery had been taken, on summary judgment, fully developed record, what the facts were there was the plaintiff alleged that he contracted trichinosis after ingesting raw pork. There was no indication in the record that there was anything different about that raw pork, any difference than what you would expect to get if you purchased pork from any supplier. There was no unique pathogen, there was no PFG pattern combination that was never before identified in the center of disease control databases. It was not a subject of a recall. Your complaint does not even say there was a mandatory recall. It says repeatedly that your client, the advanced PR, initiated a recall. And you do plead that the genetic pattern combinations were unique and new to the CDC and enabled the FSIS to link the illnesses directly to the products. But you don't say these new strains are more dangerous. You don't even tell us whether the people who got sick cooked the product or not. There's all sorts of stuff that would have been helpful to have had in the complaint that simply isn't there. The question is whether it's enough to say the cause of action. And the question is whether the facts that we have alleged, the reasonable inferences that can be drawn from those facts. It seems to me the best fact you've got for suggesting that it's more dangerous is that it's a unique pathogen not in the CDC database. But not knowing very much about pathogens or CDC databases, I don't know why the fact that something isn't in that database tells me it is plausible to infer that it's a dangerous pathogen of a kind that can't be cured from cooking. A couple of points. Every exposure to salmonella does not result in an illness outbreak. When there is an illness outbreak, by definition, it has to be more than one person. Here we have six people in two different states. So that is a clue. There is something wrong with the product that these six individuals were exposed to. Second, we don't allege or complain that each of the six individuals ingested chicken after it was improperly cooked. They were exposed to the chicken. They may have ingested it after it was cooked. They may have simply been exposed to chicken that was being prepared in their own homes. There's a question there. And what we have alleged is there was something about this chicken that resulted in an outbreak of illness that was directly connected to this product. And when that connection happens, the FSIS goes to the producer and says, there is a problem. You are correct, Your Honor, Judge Lynch. The FSIS did not order Advanced Pierre to conduct the recall. But what the FSIS does is says, if you don't conduct the recall, we will not send inspectors to your plant. So the way it works is they could try to challenge it, but they would essentially have to stop doing business because that's how it works. So what producers do in that situation is they conduct the recall. And what's different, what the judge did in the district court level was he equated the salmonella contamination here, which the FSIS said, wait, stop. There's enough here for us to say this isn't safe to sell to end consumers. So there's a heightened risk of injury. Whether or not the chicken could be cooked and salmonella could be eliminated that way, didn't change the heightened risk of injury that's associated with a product that has unique pathogens that results in an outbreak of illness in two different states with six individuals. That cooking wouldn't eliminate that risk. And that's why it can't be sold to an end user, even if it could be cooked. It can't even get to the end user because the risk associated with injury is too high given those factors. Wasn't that risk inherent in any of these prepared products if it starts with raw chicken? No. If it starts with raw chicken, unless there's some other indication, here the first indication that there was a problem was the outbreak of salmonella. But if there's no other indication, I think the assumption is raw poultry is going to have some level of salmonella. And if it reaches store shelves, then it has not obviously been subject to a recall. So it has gotten to the point of the consumer at that level is purchasing chicken, understanding that there's a certain acceptable level of salmonella in raw chicken that should be eliminated through proper cooking. So maybe I missed a point that maybe isn't explicit in your brief, or maybe it's explicit and I just missed it. But it sounds to me like what you're saying, and maybe there's more logic to it than I had thought at first, that in the typical end user case, the fact that it's just salmonella isn't going to be very appropriate of anything, because it's just as likely as not that you didn't cook it properly. But when you've got a clustered outbreak across states, it's just not plausible to think that's happening because everybody's not cooking it right. It's just at least plausible that there's some problem with it. And I guess if that's right, that would be equally true, which is why you said to me that would be a closer case. It would be equally true if you had said there was salmonella in the chicken. But you say, and I guess there's no case in Maine that says you're wrong on that as you read it, precisely because those cases don't have the kind of outbreak traceable to the product that gives rise to the inference. But then you say even if that's true, if you took the strongest view of your position, it certainly should be true when we're also dealing with a type of salmonella unknown to CDC. At that point, you've crossed whatever threshold there needs to be. So you should get to do discovery. You also made an argument I'd like to pursue, which is that the illnesses aren't necessarily in consequence of the consumption of the chicken. Correct. What is there in the record or in your complaint that makes any such claim? What we said was that after being exposed, I believe it was, Your Honor, I will find the allegation. Clusters of individuals became infected. So are we to extrapolate from that that you don't have to eat it, but if it's contaminated and if you touch it, then you touch your face, you can contract it. That's what you're saying. Yes. Yes. So exposure to salmonella can be through cross-contamination and that can lead to a salmonella-related illness, as well as ingesting undercooked poultry. And there's something in the FDA regs that says that? No. So exposure doesn't result in the illness. Correct. It could, but it doesn't necessarily. And I believe that the point, the reason that an illness outbreak, one, that's more than one person, at least two people that present with an illness, that is directly linked to a product triggers the recall. This point is bad for you. This point suggests that ordinary chicken might plausibly lead to outbreaks because it's more like people touch it than touch their mouth. It's just ordinary salmonella. But there's nothing wrong with it. You're just increasing the universe of people who could get ill from chicken that has no problem. But there are different levels of salmonella. And that is your case is stronger if that's true. Where in the complaint are you demonstrating that this is a really problematic kind? I thought the argument was, well, we can deduce that from the fact that people in different states at roughly the same time are all getting sick. And that does seem, it's plausible to think that, gee, they wouldn't all be cooking it wrong just at the same time. But now if you say, well, they don't have to cook it wrong in order to get sick from it, that kind of makes it maybe less significant that people are getting sick across states at the same time. Well, I think if I explain it in connection with the status at which Advance Pierre comes into this case, Advance Pierre is not an end user of chicken who purchases chicken with the intention of cooking it and consuming it. Advance Pierre was a commercial producer of chicken products, chicken Kievs, chicken Cordon Bleus, who purchased raw chicken parts from Mount Air with the intention of incorporating those parts into its raw chicken Kievs and Cordon Bleus with the intention of selling it to retailers. Advance Pierre couldn't do what it intended, i.e. sell its chicken to retailers because it was contaminated with the product from Mount Air. Well, that's your assumption in your complaint, not necessarily the fact, but from a complaint standard, you said that's where the contamination came. It didn't come from something that we put in. It was how we handled it. Right. Those are our allegations, Your Honor, and those allegations are based on a trace back that was conducted by Mount Air. They have a system in place for tracing each and every ingredient in those Kievs and those Cordon Bleus. So they trace the breadcrumbs and the butter and the spices. The common denominator for the recall product was the amount of chicken, and that is why this case is brought against Mount Air when we haven't named every supplier of any ingredient we have in the product. Let me just put it this way to see if this helps. It might help me understand it. I know no one would write the complaint this way, but just let me understand. If you did write the complaint this way, could you still win? Suppose you wrote the complaint to say there is this kind of salmonella strain that was found in this kind of chicken, and it's traceable to these people, and people got sick from it. The only way you can get sick from it is by ingesting it raw. If you put that in your complaint, could you still win? There was a recall, but you also say, we now know to a certainty this type of strain only makes you sick if it's ingested raw. Yes, I still think we could win. You're trying to get insurance for the recall, which is what I think is the concern. Well, the claim is one for breach of implied warranty in the first instance. So the question is whether the product was merchantable. If we can demonstrate what we've pledged, which is that at the time on air delivered the product to Advance Pierre, it was in the same state that was deemed adulterated because it was linked to human illness. If we can prove that, then what Advance Pierre had was at least plausibly an article that was not merchantable because it was not fit for the purpose it intended, inclusion in a raw chicken product for sale. They couldn't sell it. They couldn't sell it at that point. What makes the breach contingent on whether they recall? The recall is critical. You're saying it's dispositive. Well, it's an element I believe we have to plead here. We didn't have the recall. The recall was triggered because there was a determination that that chicken couldn't be sold. There was a heightened level of contamination in that chicken that made it more dangerous than the chicken someone would purchase at the local supermarket. You know, I think you may have been better off with your earlier theory. If you are asking us to hold mere presence of salmonella plus a recall is all that you need to plead, I'm not certain that that's a very wise rule. I don't believe that that is what I'm asking for, Your Honor. I think is recall part significant? I think it's significant. But I think the complaint is rather this totality. Exactly. The complaint alleges a situation where there was a product that was traced back to Mount Air. It was contaminated. It was contaminated with unique PFG pathogens that had never before been seen in the CDC database that was linked to illness outbreaks in two states, making the product therefore unsellable from advanced peers' perspective. They couldn't sell it anymore. That was the intended purpose of the product is to put it into their products so they could sell it. Wouldn't you have had to argue then that there was no method of preparing it which would have made it safe? In other words, that because of this unique strain, that cooking the normal temperature of 168 degrees would not have made it safe? It's really unclear at this point, Your Honor, because it never was allowed to get to the end consumer. So we don't know. We weren't allowed to sell it to an end consumer. No, the recall is based on sales that happened and it getting in the hands of end consumers. That argument isn't going to get you anywhere. Because you could have had an expert. Expert testimony is what I'm asking. In your complaint, you would just say we have an expert who tells us that this type of strain can't be cooked out. Can't be cooked out. But that is what discovery is for. No, you don't need discovery for that. You could retain an expert. We could retain an expert. You don't need discovery to do that. That was within your control to determine whether you could have taken some of this material that you took off the shelf and tested to see whether, in fact, you could have cured the problem with simple cooking according to the normal instructions. But that would not have eliminated the need for the recall. That would not have allowed advanced PR to hold back on the recall. Now you're getting back into the combination of salmonella and recall is sufficient and that's a difficult pill to swallow. It's the combination of the, really the link between the infected individual and the infected individual is the outbreak. The outbreak says there's something wrong with this product, something more than we would expect to see. And then the testing says there are new pathogens, something more than we would expect to see. It's not safe. It needs to be recalled. And the fact that salmonella can generally be removed with cooking is different. Okay. Thank you. Your Honors, may I please the Court? Kevin King for the Appellee, Mount Iron Farms. Your Honors, if I could just turn to my colleague's argument just now, what this complaint alleges is the presence of salmonella plus a recall equals liability. No, it doesn't do that. If it did do that, it would be challenging. But it alleges a particular type of salmonella unknown to the CDC that resulted in an outbreak. So that's what it says. Why is that not enough? It does say that there was a determination that there was this salmonella in Advanced Pierre's Foods, which, by the way, combined Mount Air's chicken with cheese, with breadcrumbs, with flour, with all of that. You're evading the question. I'm sorry, I'm not meaning to evade the question. So you just want to isolate the basic, what you suggest, starting off, if it's salmonella plus a recall, you win. That's right. Okay. So she comes back and says, well, it's not salmonella plus a recall. It's really bad salmonella plus a recall. You make salmonella which resulted in injury across state lines. Certainly, Your Honor. That is in there. What is in there is that it's unique salmonella. What is not in there, as Your Honor pointed out during the prior argument, is that this was unusually dangerous salmonella. It's true that it's new. But she tries to fill that in by saying, and we have the fact of injury, and it was a sufficient number of injured people in a sufficient number of different places that an inference can be made that this is particularly dangerous. I guess what I would say is, I don't think that's a plausible inference, but even if you were to draw it, let me tell you why we win. Which is, suppose you draw the inference that this new salmonella is an unusually dangerous type of salmonella. Not in a complaint, but you're drawing the inference. If you draw that inference, what you have is that Advanced Pierre's finished meals are unusually dangerous. But that's not enough to get liability plausibly for my client. That may be, but we're not at summary judgment. We're at 12B6. The question is the adequacy of the complaint, not whether she can, if she survives, prove the case. I would concede that, Your Honor. She does not have to prove her case today. STAR does not have to prove that we're liable. What they have to do is plausibly allege that we're liable. And to do that, what they need to do is allege something that's more than nearly consistent with liability on our part. I quote to you from Iqbal in the Supreme Court, 556 U.S. 678, where a complaint pleads facts that are merely consistent with liability on the plaintiff's part. And that, plus an outbreak, would be consistent with liability, potentially. We don't know exactly what happened. Maybe it turned out people thought salmonella could be cooked out, and it turns out it was a salmonella strain that wasn't that kind. But here she's saying it's more than that because she has pled it's a unique strain of salmonella. CDC, she alleges, concedes they don't know anything about this type. And this type happens to be connected to cross-state, relatively simultaneous illnesses. So she says, in light of that, since we're at 12B6 and it's notice of pleading, it's plausible to think that we're dealing here with a strain that caused the injury, even if it was cooked properly. I would concede all of that, Your Honor. But the point is, they allege, and the FSIS testing found, that there's this strain in Advanced Pierre's finished products. She has not shown, and the complaint does not allege, any basis to say that that was in Mount Air's Chicken when it arrived at Advanced Pierre. There's a disconnect here between, on the one hand, Advanced Pierre's downstream products, and on the other hand... This is a different theory. This is not what the district court relied on. This is a different argument. This is an argument we made in the district court. I agree. The district court decided on a related basis, which is Salmonella. That's right. We argued both these points in the district court. With respect to the argument that the district court ruled on, do you have any argument to defend its ruling? I think its ruling is correct, that if all they're alleging is Salmonella, that that's not enough. They're here today saying that they're alleging more than that. And you sound like you're agreeing that since they're alleging more than that, that gets past that issue. The district court got it wrong. I don't think the district court got it wrong with respect to the argument that Starr made in the district court. I think Starr here today is making a more aggressive and nuanced argument, and I'm responding to it, Your Honor. I think the district court's judgment is correct, and it should be affirmed. Now, if you want to say that the precise rationale that the district court gave is not a sufficient response to the argument Starr is making today, I'd say two things. First, I'm not sure Starr made the argument it's making today in the district court. But even if it did, what I'm here to tell you is it's not enough under Rick Ball. Why? And the reason is that they haven't alleged a plausible basis to conclude that the contamination, the issue, whatever it was with Advanced Pierre's finished meals, somehow came from Mount Air. You're now shifting back to the argument of the district court. That sounds like to me you're conceding that the argument she's now making in response to the district court's rationale  It may not be enough to refute the judgment the district court reached, because you have now this other argument the district court didn't reach that would supply the basis for affirming. But I don't hear you saying that the argument she's now making to us fails to refute the rationale given by the district court. If you draw the inference that this new and unique strain of salmonella was super dangerous salmonella, again, I don't think it's adequately pled. I don't think it's a plausible inference. But I understand that you might take a different view. If you took that different view, then yes. Okay, but so what I'm trying to ask is the middle step. Do you have an argument about why we cannot plausibly draw that inference from the facts alleged? Yeah, my argument there would be that the complaint hasn't given you any basis to say that this is different than the many other countless strands of salmonella that are out there. There are hundreds or thousands of them. They all have different names. They all have different PFG patterns. What you're basically arguing is that this is no different than any other salmonella outbreak. If they had cooked it correctly, we wouldn't be here. I'm sorry? Well, what you're saying is that this is like all the other salmonella outbreaks. If it had been cooked correctly, we wouldn't be here. That's my understanding, and when you read the complaint, you really can't get any more than that. She says it's unique. Right. She says it's a unique strain. And that the unique strain is unknown to the CDC. You're saying that there's a zillion types of other unique salmonella strains unknown to CDC? I don't know about the last part, Your Honor, and I don't want to speculate on that. All I'm saying is there's no allegation in the complaint that this is a super salmonella that couldn't be cooked out. If you look at 77 Federal Register, it's 72-689. It's the FSIS guidelines that explain why they might tell somebody to do a recall. And what it says is there are many different reasons why we might do a recall. One of them is that the food is contaminated. Another of them is that it came with inadequate cooking instructions or labeling. And by the way, if the food itself is contaminated, you still need to know, where did the contamination come from? And that's why the plaintiffs in this case must plausibly allege that the contamination came from us. And I guess, Judge Barron, to your question, I think Starr's argument fails at the threshold, but even if you drill down deeper and go to the second level, maybe go beyond where the district court went, it still fails because they haven't given a plausible basis to say in the complaint, not in the new facts that they're bringing out today or in their appellate brief, that this problem, whatever it was, came from Mount Air. Indeed, there are so many other problems. And so when you look at it, all five of them. They allege it came from Mount Air, right? They allege. In the complaint. Yeah, it's a bare conclusion. There's no supporting details. Is that not a factual allegation? They allege that the chicken came from Mount Air. They don't provide any plausible basis to say that the problem, whatever it was, came from Mount Air. In fact, they don't even identify what the problem was. That in itself is a problem. But they allege that there was contaminated chicken. And they allege that contamination was in Mount Air's chicken. They allege that there was contaminated finished meals from Advanced Pierre. FSIS determined that there was a problem with Advanced Pierre's meals. They then make the bare conclusion that, oh, yes, we traced the chicken from those meals back to Mount Air. That's a factual conclusion. Yes, it is. So that's just a factual allegation we take as true. The chicken, you must take as true that the chicken in these meals came from Mount Air. But then you need an inference. You need to speculate or jump to say, well, the chicken from Mount Air was the problem. Because what about the broccoli? Don't they allege that? No, they do not, Your Honor. Do they complain? There's no CDC report that says that this was caused by improper handling within the manufacturing facility which put these products together. No, Your Honor. There is a CDC, I'm sorry, not CDC, FSIS letter to Advanced Pierre that's not in the complaint. But basically there's a determination by FSIS and communications between them and Advanced Pierre that there's a problem with your product. But the complaint doesn't tell us what that problem was. That's in itself a problem. The complaint in paragraph 21 says Advanced Pierre traced the source of this particular salmonella outbreak and the recall to two truckloads of adulterated chicken parts contaminated with this type of unique salmonella which had been purchased from Mount Air. Why isn't that enough to show the connection? Right. The reason that's not enough is they say if you look at the earlier allegation in their complaint about how the computer system works, what it does is it assigns batch numbers to each incoming product. So they assign batch numbers to Mount Air's chicken. The chicken got combined with cheese and everything else and made into finished meals. So what they're saying when they're saying that is we looked back and the chicken in these recalled meals, that chicken came from Mount Air. And what I'm telling you is, yes, it's true. Now they allege it's adulterated raw chicken. They don't just say chicken. Right. They allege that it's adulterated, but that's a legal conclusion. And it's step one of the Iqbal analysis. Legal conclusions are filtered out. They say a couple of things that are disguised as facts, but essentially they're legal conclusions. And adulteration is one of them. So if they'd used the word contamination, then it wouldn't be a legal conclusion? No, it's not a matter of linguistics, Your Honor. No, but I'm asking, suppose they had said, in that exact thing, rather than saying it was adulterated chicken, they said it was chicken with this strain of salmonella. They would need to provide a plausible basis for saying that. No, there would not be a factual allegation in its own right that we have to take as true, which you could then disprove in summary judgment or whatever else. It would be a different case, Your Honor, but whatever the issue. So why does the word adulterated matter? Because they're not trying to prove adulteration. They're bringing a breach of warranty claim based on the argument that this chicken was contaminated. That word in context is just telling you it's contaminated with the salmonella. What else could it mean? What they're alleging is that our chicken came in with salmonella, and if that's all they're alleging, they lose. No, no, with the strain, the problematic strain. They don't have an allegation that ours came in with that strain. That's not in the complaint. What else is it that Judge Lynch is reading other than when they say that it came in adulterated? In context of the complaint as a whole, the only kind of adulteration they're talking about is coming in with that strain. In fact, they say adulterated raw chicken parts contaminated with the particular unique strain of salmonella. Right. They allege that that came in, but they didn't test. In fact, no one tested us. They don't have to for the complaint. They're just alleging a fact. They could be wrong. They have to plausibly allege a basis for liability on our part. I guess what I'm saying is that allegation is equally consistent with many other situations where the problem didn't come from us. The problem came from inadequate labeling and cooking instructions and other things of that nature. Regardless, I guess on that point, I'd point the court to this court's decision in Pruel where there what the court said is, yes, the plaintiff's allegations that they were paid not enough under the Fair Labor Standards Act, that may have been consistent with a violation of the FLSA, but it wasn't enough, in part because other factors could have explained what was going on there. That's the exact same situation we're dealing with here. Or in Twombly where the allegations of parallel conduct could have been consistent with liability on the part of the antitrust defendants, but they could easily have been consistent with liability. We had a lost insurance policy case not that long ago, which obviously they couldn't find the policy. It would be consistent with their allegations that there was no policy, but we concluded you could infer plausibly that there was a policy, even though they couldn't prove to a certainty in the complaint. We'd let the complaint go forward. That's right, Your Honor. I've read the case. It's your decision. And the key in that case, the thing that you had in that case and that you don't have here, is that you had testimony from the individual who oversaw insurance for that. I think it was a school, Your Honor. You don't have those kinds of allegations here. You don't have things to push them over the hump from factually neutral to factually plausible. If I could just touch on the economic loss issue, unless there are other questions, on 12b-6. I would reiterate that the judgment should be affirmed on 12b-6, which deals with the entire case. But in addition to that, the district court correctly took a belt and suspenders approach and said beyond 12b-6, the strict liability claim on the part of Starr here fails because it's barred by the economic loss doctrine. That doctrine says that when you've got a tort claim, any kind of tort claim, you have to allege damages that are either harm to persons or other property. Here, Starr hasn't done any of that. What they've done, and if you look at page A-57, that's from the district court argument, what Starr's counsel said is, our damages are the expense of the recall. At page A-10 in the complaint, they say the same thing.  Those are classic examples of what the economic loss doctrine bars. They come back with two arguments, and let me just quickly explain why both of those fail. The first is they say, well, the contaminated chicken injured the broccoli and the cheese. They say this component of a multi-component meal injured the rest of it. But in the Oceanside case, the Maine Supreme Judicial Court said, no, that's not going to work. When one part of a multi-component product injures the rest, that's still barred by the economic loss doctrine. And then second, they come back and they say, well, it's too early. We don't really know what our losses are, but maybe we'll figure them out in discovery. But again, Big Ball says you can't speculate your way past the pleading standard. Okay. Thank you, Your Honors. Thank you. Briefly, just in response to the argument with respect to strict liability, we recognize that the vast majority, and it may ultimately be the case that all of the damages sought here are economic in nature. And if that's the case, then recovery would not be available to us in tort. We understand that. But at this stage, the allegation is that a product was incorporated into another product, and there is a question as to whether every element of the damage here would really be economic in nature and not at all relate to damage to a product. Could damage, for instance, to a container or something like that be considered damage to the product? And our point is that at this stage in the case, in a 12-6 motion, the judge decided prematurely that as a matter of law, none of the damages could possibly be recovered under strict liability theories. With respect to the plausibility analysis, there are several... I'm sorry. Why wouldn't you know before you brought the complaint what your damages were? If it contaminated something else and you had damages, why wouldn't you know? We know, again, the vast... Why do you need discovery on that point? I believe it's really a question of how the issue would be resolved in the context of litigation if it's a part that's damaged in another part. But, again, we don't take issue with the ultimate conclusion that we can't recover the economic loss under a tort theory. And on the plausibility analysis, again, we brought a claim against every supplier of every ingredient in the recall product. We only brought a claim against the supplier that was the common denominator in the trace back conducted by advanced peer after the recall. And we do plead, as Your Honor pointed out, we do plead that there was a system in place for tracing all of the ingredients. The trace back was conducted. The trace back resulted in one common denominator, and that was non-tear. So it's clearly plausible that that was the entity that was a source of contamination at issue. Okay, there are no further questions from the panel. Thank you both.